ECKFORD W. TYLER *vs.* ODD FELLOWS' MUTUAL RELIEF ASSOCIATION & another.

Hampden.    Sept. 28. — Oct. 20, 1887.    C. ALLEN & HOLMES, JJ., absent.

A beneficiary association was organized under the Pub. Sts. c. 115, §§ 2, 8, for the purpose of defraying the expenses of the sickness and burial of its members, and rendering pecuniary aid to the families of deceased members or to their heirs. The by-laws of the association provided, that, after payment of the expenses of the funeral and of the last sickness, the balance should be paid to the person designated by the member in his application for membership, or last legal assignment, provided such person was an heir or member of the decedent's family, and, if either of the persons designated should die, the sum which would have been payable to him if he had lived should be paid to the widow of the designator for the use of herself and her minor children. A member of the association designated his wife as his beneficiary. She afterwards obtained a divorce from him, and he, after this, changed the designation to his son and to his married sister, the latter not being a member of his family and not dependent on him for support. *Held,* that the wife, by obtaining a divorce, lost her rights under the designation; that the attempted designation to the sister was invalid; and that the son was entitled to the fund.

A member of a beneficiary association-organized under the Pub. Sts. c. 115, §§ 2, 8, had certificates in two classes, each for $1000. Before his death he designated his minor son as his beneficiary to the amount of $500, and his sister as his beneficiary to the amount of $1500. The latter designation was in fact invalid. On his death, the guardian of the son told the president of the association that he thought the son was entitled to $2000. The president did not dispute that the son was entitled to $500, but claimed the balance as belonging to the sister. The guardian yielded to this claim, believing it to be well founded, and received $500, understanding that the association was about to pay $1500 to the sister, and signed a receipt, acknowledging that the $500 was received in full of all demands or claims against the association. The association then paid the $1500 to the sister. *Held,* on a bill in equity brought by the son against the association to recover the $1500, that, if the receipt could be construed as an agreement not to claim the $1500, there was no consideration for it. *Held, also,* that the son was not estopped to maintain the bill by the conduct of his guardian.

BILL IN EQUITY, filed March 25, 1887, by Eckford W. Tyler, a minor, who appeared by his guardian, Reuben Waterman, against the Odd Fellows' Mutual Relief Association and Ruetta A. Massure, to compel the defendant association to pay to the plaintiff the sum of $1500. The case was heard in the Superior Court, by *Dewey,* J., and reserved for the consideration of this court. The facts appear in the opinion.

*A. M. Copeland,* for the plaintiff.

*E. H. Lathrop,* for the Odd Fellows' Relief Association.

*D. E. Webster,* for Massure.

KNOWLTON, J. Before July 16, 1880, L. E. Tyler, the plaintiff's father, had become a member of classes A and C of the defendant association, and had designated his wife, Etta A. Tyler, now Ruetta A. Massure, one of the defendants, as his beneficiary in class A, and his son, the plaintiff, as his beneficiary in class C, and thereby each of said beneficiaries became entitled, under the association's incorporation and its by-laws, to receive, after his death, the sum of $1000.

On February 4, 1885, his wife obtained a divorce from him for his fault, and the first question in the case is whether she thereby lost her rights as his beneficiary. The defendant corporation was organized under an agreement of association " for the purpose of defraying the expenses of the sickness and burial of its deceased members, and rendering pecuniary aid to the families of deceased members, or their heirs." The by-laws of the association provide that, after payment of the expenses of the funeral and of the last sickness, " the balance shall be paid to the

person or persons designated by the member in his application for membership, or last legal assignment, provided such person or persons are heirs or members of the decedent's family;" also that, "if either of the persons so designated have died, the sum which would have been paid to said decedent's assignee, had he been living at the time of the member's death, shall be payable to the widow of the designator, for the use of herself and his minor children, if any, or, if he leave no widow, it shall be payable to a guardian or trustee appointed for said children;" and that "if the designator leave no widow, or children, or assignee, then it shall be payable to his heirs."

The principal object of the association manifestly is, as its members die from time to time, to provide for those nearest to them whom they leave behind. Each of the several expressions touching the persons to whom the moneys are to be finally paid, has reference to the relation of such persons to the member at the time of his death. The language in the agreement of association, "to the families of deceased members, or their heirs," the proviso limiting payments upon designations to "heirs or members of the decedent's family," and the word "widow" in the next clause, are inconsistent with any other interpretation. Assuming then, but not deciding, that the validity of a designation is to be determined at the outset, with reference to the relation then existing between the member and his beneficiary, we think, to make it available after his death, there must then be a relation to the deceased such as is contemplated by the agreement of association and the by-laws relating to payment; and this view is strengthened by a consideration of the statute under which the association was organized. Pub. Sts. c. 115, §§ 2, 8. *Elsey* v. *Odd Fellows' Relief Association*, 142 Mass. 224.

At the time of the death of L. E. Tyler, his former wife, Etta A. Tyler, was not a member of his family nor one of his heirs, but her connection with him had been severed by the divorce. We therefore think she had lost her rights under the designation of her former husband, and was not entitled to anything from the defendant association after his death.

On June 10, 1885, L. E. Tyler attempted to change the designation in class A from Etta A. Tyler to Emily J. Cook, his sister, and in class C from his son to his son and his said sister, each

one half. The attempted designations to his sister, who was neither a member of his family nor dependent upon him, were invalid for the reasons set forth in *Elsey* v. *Odd Fellows' Relief Association, ubi supra.*

The plaintiff, being his only son and heir at law, was entitled, either in that relation or as his designated beneficiary, to the entire fund in each class, and it becomes unnecessary to consider whether any of the attempted changes in designation were sufficiently approved by the defendant corporation.

But the defendant contends that the plaintiff's right to recover the balance has been barred by the acts of his guardian. This claim suggests two questions: Is the plaintiff concluded by a written contract? Is he barred by an estoppel *in pais?* His guardian, Reuben Waterman, acting under an appointment in Connecticut, had an interview with the president of the defendant corporation, in which he informed him that he thought the plaintiff was entitled to $2000. The president did not dispute that he was entitled to $500, but claimed the balance as belonging to Emily Jane Cook. It is fairly to be inferred from the report, that Waterman yielded readily to said claim, believing it to be well founded. There is nothing to indicate that he made any further assertion of his right, or that there was any controversy between the parties. Thereupon he was paid $500, and he signed, as guardian, a receipt for said sum containing these words : " which I hereby acknowledge to be in full of all demands or claims against said association which I now hold or to which I may be entitled as the assignee of L. E. Tyler, now deceased, and who was a member in class C in said association at the time of his death." Without considering whether a Connecticut guardian could bind his ward by a contract relating to property here, and assuming this to be in form a contract, and not a mere admission, we are of opinion that there was no consideration for an agreement not to claim the balance of the $2000 to which the plaintiff was entitled. It is well settled that the payment of a part for the whole of an ascertained and liquidated debt is not a sufficient consideration to support a promise to accept it as a full payment and satisfaction. *Harriman* v. *Harriman,* 12 Gray, 341. *Perkins* v. *Lockwood,* 100 Mass. 249. *Curran* v. *Rummell,* 118 Mass. 482. Where a controversy is compromised,

or where the claim is for unliquidated damages, and the parties fix a sum which one agrees to pay and the other to receive as a final settlement of what was before undetermined, the rule is different. In such a case, the agreement of each is a good consideration for that of the other.

The writing in this case was apparently made under a mistake. The parties evidently supposed that the attempted designations of said Cook were valid, and that the plaintiff had no right to anything from class A. The word " assignee" relates to his connection by designation, and the description of the claim refers to class C. alone. In any event, therefore, the writing can only apply to the claim under the certificate in class C, and for the reasons above stated we think it cannot prevent the plaintiff's recovering the unpaid balance under that.

It remains to inquire whether the plaintiff is estopped by the conduct of his guardian from maintaining this bill. It appears that, when Waterman received the $500, he understood that the defendant association would pay the remaining $1500 to Mrs. Cook, and he made no objection thereto. An estoppel results from conduct which was intended to induce, and has induced, another to act to his disadvantage. It can only come from a successful effort to get one to change his situation. *Plumer* v. *Lord*, 9 Allen, 455. *Andrews* v. *Lyons*, 11 Allen, 349. *Turner* v. *Coffin*, 12 Allen, 401. *Carroll* v. *Manchester & Lawrence Railroad*, 111 Mass. 1. The act of the association by which its situation was changed to its detriment, and which is relied on as a foundation for an estoppel, was the payment of $1500 to Emily Jane Cook. It does not appear that Waterman had a wilful design to induce this act. On the other hand, the corporation seems to have proposed, and Waterman to have merely accepted, the payment to himself. It prepared a writing and sent it to him for his signature. He signed and returned it, and the draft was then sent him by mail. He passively assented to the arrangement which the corporation suggested. There is nothing to indicate that he received the plaintiff's money, and signed the receipt, with a view thereby to induce the making of a payment to said Cook. He seems rather to have understood that the corporation had decided for itself its action with reference to her, as well as to himself, and to have had no purpose

beyond getting what he supposed belonged to his ward. If the plaintiff could have been estopped by conduct of his guardian in a transaction of this kind outside of the State of his appointment, which we do not intimate, an essential element of estoppel was wanting, and this defence cannot prevail.

The divorce having deprived the defendant Massure of her interest in the fund, and the designations to the defendant Cook being invalid, and nothing having occurred to bar a recovery by the plaintiff of the balance of the money belonging to him, there must be a decree in his favor against the defendant corporation for the sum of $1500, and interest; and as to the defendant Massure the bill may be dismissed.        *Decree accordingly.*